**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RUBEN FELICIANO, | : | |
|     Petitioner, | : | CIVIL CASE NO. |
| | : | 3:20-CV-01819 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | MARCH 23, 2024 |

**RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (DOC. NO. 1)**

**I.    INTRODUCTION**

Petitioner Ruben Feliciano ("Feliciano") moves, pursuant to section 2255 of title 28 of the United States Code, to vacate his conviction under section 924(c) of title 18 of the United States Code.  See Motion to Vacate Section 924(c) Conviction ("Pet'r's Mot."), at 1 (Doc. No. 1).  Feliciano relies primarily on the Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019), to argue that his conviction for using or carrying a firearm during and in relation to a crime of violence is unconstitutional because it is predicated on conspiracy, which "is not categorically a crime of violence." Id.  Feliciano also argues, in the alternative, that "the Connecticut state murder statute is [also] not categorically a crime of violence[.]"  Id. at 2.  The government opposes the Motion.  See Government's Memorandum in Opposition to Feliciano's Motion Under Section 2255 ("Gov't's Opp.") (Doc. No. 7).

For the reasons set forth below, the Motion is denied.

1

## II.   BACKGROUND

### A.   Factual Background

Feliciano was a member of the Meriden, Connecticut chapter of Los Solidos, "a gang with members in Meriden and other Connecticut cities." See United States v. Feliciano, 223 F.3d 102, 107 (2d Cir. 2000). On the night of March 24, 1997, Feliciano, along with fellow gang members Ronald Pagan ("Pagan") and Alex Rivera ("Rivera"), "drove with fellow member" Edwin Ramos ("Ramos"), who was 16 years old, "to a cemetery in Meriden." Id. There, in the early morning hours of March 25, Feliciano shot Ramos in the head, resulting in Ramos' death. See id. The murder was ordered by Nelson Gonzalez, the president of the gang's Meriden chapter. See id. at 109.

On September 1, 1998, a grand jury indicted Feliciano, Pagan, and Gonzalez. See id. at 107. Feliciano was charged with conspiracy to commit a violent crime in aid of racketeering ("VCAR"), in violation of section 1959(a)(5) of title 18 of the United States Code (Count One); VCAR murder, in violation of section 1959(a) (Count Two); and using and carrying a firearm during and in relation to a crime of violence, in violation of section 924(c) (Count Three). See id. Feliciano's co-defendant Pagan was charged with aiding and abetting under the same Counts.[1] See id.

On February 8, 1999, the jury found Feliciano guilty of all three Counts. See United States v. Feliciano, No. 3:97-CR-00204, Verdict Form (Doc. No. 305). Pagan was similarly found guilty of all three Counts. Id. On April 29, 1999, Judge Peter Dorsey sentenced Feliciano and Pagan to "life imprisonment on Count Two (the

---

[1] Gonzalez was not charged with Count Three. See United States v. Feliciano, 223 F.3d 102, 107 (2d Cir. 2000).

2

substantive VCAR count), to run concurrently with a sentence of ten years' imprisonment on Count One (the VCAR conspiracy count) and consecutively to a sentence of sixty months' imprisonment on Count Three." See Feliciano, 223 F.3d at 110; accord United States v. Feliciano, No. 3:97-CR-00204, Judgment (Doc. No. 309). The Second Circuit upheld the convictions and sentences of Feliciano and Pagan on appeal. Feliciano, 223 F.3d at 126.

    B.    Procedural Background

In 2001, Feliciano sought habeas relief for the first time by filing a pro se petition, which was denied. See Feliciano v. United States, No. 3:01-CV-2100, Motion to Vacate (Doc. No. 1); United States v. Feliciano, No. 3:97-CR-00204, Ruling on Motion to Vacate (Doc. No. 383). In June 2005, Feliciano filed a pro se Motion to modify his sentence under section 3582(c) of title 18 of the United States Code, which was also denied. See United States v. Feliciano, No. 3:97-CR-00204, Order (Doc. No. 411). Feliciano also submitted a pro se Motion to file a successive habeas petition in July 2005, which was transferred to, and ultimately denied by, the Second Circuit. See id. (Doc. Nos. 407, 421, 424).

In September 2019, Feliciano submitted another Motion to file a successive habeas petition, in light of Johnson v. United States, 576 U.S. 591 (2015) and Davis v. United States, 139 S. Ct. 2319 (2019). See Feliciano v United States, No. 19-2936. On April 28, 2020, the Second Circuit granted Feliciano's application to file a successive habeas petition. See United States v. Feliciano, No. 3:97-CR-00204, Order of USCA (Doc. No. 484). The matter was then transferred to this court. See id. (Doc. No. 486). On December 4, 2020, Feliciano filed his counseled Motion to Vacate. See Pet'r's Mot.

3

The government filed its opposition on January 18, 2021.  See Gov't's Opp.  Feliciano filed a Reply Memorandum on January 29, 2021.  See Petitioner's Reply to Government's Memorandum in Opposition to Motion to Vacate ("Pet'r's Reply") (Doc. No. 8).

### III.     LEGAL STANDARD

Section 2255 of title 28 of the United States Code permits a federal prisoner to move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Therefore, relief is available "under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).  The petitioner bears the burden of proving that he is entitled to relief by a preponderance of the evidence.  See Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

### IV.    DISCUSSION

The court notes, at the outset, that it has already decided the two issues advanced in Feliciano's Petition.  On October 25, 2021, this court denied a habeas petition filed by Pagan, Feliciano's co-defendant.  See Pagan v. United States, 568 F. Supp. 3d 156, 168 (D. Conn. 2021).  Specifically, the court rejected Pagan's arguments (1) that his conviction for using and carrying a firearm during and in relation to a crime of

violence was subject to vacatur because one of the two predicate "crimes of violence", i.e., conspiracy to commit murder, was not a "crime of violence", and (2) that murder, under Connecticut law, was not a "crime of violence" for purposes of section 924(c). Id. at 162-69. Feliciano advances the same arguments in his Petition. See Pet'r's Mot.[2] The court addresses each argument in turn.

### A. Whether the Unconstitutionality of the Residual Clause Warrants Vacatur of Feliciano's Section 924(c) Conviction

Feliciano contends that, following the Supreme Court's rulings in Davis and prior, related cases,[3] this court must vacate his conviction under section 924(c). Section 924(c) criminalizes using and carrying a firearm during and in relation to a crime of violence. See 18 U.S.C. § 924(c). Before Davis, the statute defined "crime of violence" as either (1) "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another"; or (2) "an offense that is a felony and that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. at § 924(c)(3); Pagan, 568 F. Supp. 3d at 160-61. The former definition is known as the "elements clause", whereas the latter definition is known as the "residual clause". See Davis, 139 S. Ct. at 2323-25.

---

[2] Pagan filed an appeal of the court's Ruling on November 9, 2021, but he ultimately withdrew his appeal on November 28, 2023. See Pagan v. United States, No. 21-2818. Accordingly, because precise guidance from the Second Circuit as to the issues in Feliciano's Petition is no longer forthcoming, the court believes that there is no reason to further delay ruling on Feliciano's Petition.

[3] Specifically, Feliciano cites Taylor v. United States, 495 U.S. 575 (1990) and Shepard v. United States, 544 U.S. 13 (2005), a line of cases that resulted in the creation of the "categorical approach" and the "modified categorical approach"; Johnson, where the Court struck down the residual clause of the Armed Career Criminal Act as unconstitutionally vague; and Sessions v. Dimaya, 138 S. Ct. 1204 (2018), where the Court struck down another residual clause in a similar context, primarily relying on the holding of Johnson.

5

In Davis, the Supreme Court struck down the residual clause as unconstitutionally vague, meaning that a crime can only meet the statutory definition of "crime of violence" if it falls within the ambit of the elements clause, i.e., the crime must be "a felony that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(a).  Conspiracy crimes generally do not meet this criterion.  See Pagan, 568 F. Supp. 3d at 161.  Indeed, both the petitioner and the government agree that conspiracy to commit VCAR murder no longer serves as a valid predicate crime of violence following the new rule of constitutional law established by Johnson and Davis.  See Pet'r's Mot. at 10; Gov't's Opp. at 5.  Feliciano argues that, because his conviction under section 924(c) was based on conspiracy to commit VCAR murder as the predicate offense, his conviction under section 924(c) must be vacated.  See Pet'r's Mot. at 9-11.  The government, however, asserts that the conviction remains valid because it was also based on VCAR murder, which is a valid predicate.  See Gov't's Opp. at 7.

The court addressed this same issue over two years ago.  Pagan, Feliciano's co-defendant, filed a habeas petition arguing that, following Davis, his conviction under section 924(c) was no longer valid.  See Pagan, 568 F. Supp. 3d at 160-62.  The court rejected Pagan's argument and held that, when a section 924(c) conviction rests on multiple predicates, one valid and the other invalid after Davis, the valid predicate may still sustain the conviction, provided that the valid predicate is supported by a sufficient factual basis in the record.  See id. at 162-67.  The court determined that, in Pagan's case, the valid predicate—aiding and abetting substantive murder—was clearly supported by the factual record.  See id. at 167.

In reaching its holding, the court concluded that, even in the absence of exactly on point, precedential case law, the overwhelming weight of existing authority supported its view. Id. (collecting cases); see, e.g., United States v. Eldridge, 2 F.4th 27, 35-40 (2d Cir. 2021), vacated on other grounds by Eldridge v. United States, 142 S. Ct. 2863 (2022) (Mem.) (upholding section 924(c) conviction based on Hobbs Act robbery and conspiracy to commit Hobbs Act robbery because, although the conspiracy charge was no longer a valid predicate, the Hobbs Act robbery was—at the time—a valid predicate as a "crime of violence")[4]; United States v. Minaya, 841 Fed. App'x 301, 303-05 (2d Cir. 2021) (summary order) (upholding two section 924(c) convictions that each "rested on one valid predicate crime . . . and one arguably invalid predicate crime" because there was "no doubt that a rational juror would have convicted [the defendant] on the [section] 924(c) charge even had [the valid predicate] been the sole predicate charged"); United States v. Walker, 789 Fed. App'x 241, 244-45 (2d Cir. 2019) (summary order) (upholding section 924(c) conviction, under Davis, that relied on both a valid and invalid predicate); United States v. Riley, No. 20-CV-2201, 2021 WL 2186229, at *4-5 (E.D.N.Y. May 28, 2021) (rejecting the argument that the presence of one invalid predicate automatically invalidates a section 924(c) conviction and holding that where

---

[4] Although Eldridge has subsequently been vacated by the Supreme Court, that vacatur was based on United States v. Taylor, which held that Hobbs Act robbery does not qualify as a "crime of violence" under the elements clause of section 924(c). 142 S. Ct. 2015, 2025-26 (2022). On remand, the Second Circuit concluded that, because Hobbs Act robbery no longer qualified as a "crime of violence", and because there were no other valid predicates for the defendant's section 924(c) conviction, that conviction had to be vacated. See United States v. Eldridge, 63 F.4th 962, 964-65 (2d Cir. 2023).

Notably, on remand, the Second Circuit adhered to its prior conclusion that a section 924(c) conviction need not be vacated if one of the possible predicates is a crime of violence, even if other possible predicates are not. See id. ("Because none of the three possible predicates for [the defendant]'s conviction under Count Seven is a crime of violence under § 924(c)(3)(A), we VACATE [the defendant]'s conviction on Count Seven . . . ."). Thus, the reasoning of Eldridge's original holding, as relied upon this court in Pagan, remains sound.

there are "murder conspiracy and murder charges [that] involve the same murder, the jury's finding of guilt on the murder count" suffices to uphold the corresponding firearm conviction under section 924(c) (emphasis in original)); United States v. Gomez, No. 97-CR-696, 2021 WL 3617206, at *3-6 (S.D.N.Y. Aug. 16, 2021) (concluding that the defendant's "section 924(c) conviction undoubtedly rest[ed] on a valid predicate" when that conviction was predicated "on his conspiracy to murder and [the] substantive murder of [the victim]" and "the jury [had] found it proven, beyond a reasonable doubt, that [the] defendant had committed . . . [the] substantive murder" by "provid[ing] a subordinate with a firearm, direct[ing] him to murder [the victim], and pa[ying] him thousands in compensation" (internal quotation marks and citations omitted)).

Indeed, since this court's Pagan Ruling, Second Circuit case law has continued to align with the court's conclusion. In Stone v. United States, the Second Circuit analyzed a habeas appeal in which the petitioner was convicted by a jury of (1) conspiracy to murder in aid of racketeering, (2) murder in aid of racketeering, and (3) using a firearm during and in relation to crimes of violence. 37 F.4th 825, 827. In assessing whether relief was warranted, the Second Circuit applied the "harmless error" standard of review and explicitly rejected the petitioner's contention that it was required to apply the "categorical approach" by "look[ing] at the minimum criminal conduct identified in the offense to which the [section] 924(c) violation pertains"—i.e., conspiracy—"and see if that offense qualifies as a crime of violence." Id. at 829-30. The petitioner's argument, the court reasoned, misunderstood the proper legal standard. While the categorical approach is employed "to determine whether the defendant committed a crime of violence at all", the proper inquiry, in determining

whether the invalid conspiracy predicate invalidated the section 924(c) conviction, is "whether [the petitioner] was prejudiced by the erroneous jury instruction stating that his [section] 924(c) conviction could be predicated on either or both of two crimes, only one of which remains a constitutionally valid predicate." Id. at 831.  Applying that "harmless error" standard, the court concluded that the petitioner was not prejudiced because "the error of instructing the jury on the now-invalid predicate was harmless. . . because the jury found facts 'satisfying the essential elements of guilt' on the valid predicate of substantive murder in aid of racketeering 'that would [have] sustain[ed] a lawful conviction' on the firearm offense."  Id. at 832 (quoting United States v. Laurent, 33 F.4th 63, 86 (2d Cir. 2022)).

Stone, therefore, strongly supports this court's holding in Pagan that a section 924(c) conviction predicated on convictions for both conspiracy to commit murder and substantive murder should not be automatically vacated simply because conspiracy is no longer a valid predicate.  Even more recent case law within this Circuit continues to support this view.  See, e.g., Rivera v. United States, 23-CV-768, 2023 WL 7005072, at *6-9 (S.D.N.Y. Oct 24, 2023) (concluding that the defendant's section 924(c) conviction did not warrant habeas relief because, although "the jury did not specify whether it based [the defendant's] [section] 924(c) conviction on the actual murder, the conspiracy, or both", the record nonetheless "ma[de] clear that [the defendant] [could not] demonstrate that he was actually prejudiced by th[e] [jury] instruction because the jury would have convicted him of the [section] 924(c) offense even if properly instructed that the substantive murder was the only predicate crime of violence").

9

In sum, the court sees no reason why it should depart from the legal conclusion that it reached in Pagan. Feliciano's Petition does not raise any additional arguments that compel a different conclusion from this court. Indeed, Stone appears to expressly foreclose Feliciano's argument that the court must presume that "Feliciano's [section] 924(c) conviction rests upon the conspiracy [conviction]." See Pet'r's Mot. at 9-11; Pet'r's Reply at 4-7; Stone, 37 F.4th at 827-32.

Applying this legal standard to the facts of Feliciano's case, the court concludes that Feliciano's Petition warrants the same outcome as Pagan's Petition. Feliciano was charged with the same crimes as Pagan. The only difference between the two is that Feliciano was the one who fired the shots that killed Ramos. See Feliciano, 223 F.3d at 109. Feliciano was ultimately convicted for the murder of Ramos. See Verdict Form. The uncontroverted evidence at trial was that Feliciano shot Ramos with a firearm. See, e.g., Feliciano, 223 F.3d at 109; United States v. Feliciano et al., 3:97-CR-00204, July 26, 1999 Trial Transcript, at 64:23-69:10 (Doc No. 467) (testimony from Rivera, at Feliciano and Pagan's joint trial, that Feliciano "shot" Ramos "in the head" with a firearm). Although Judge Dorsey's jury instructions stated that conspiracy to commit murder qualified as a predicate crime of violence—which, of course, is no longer legally correct following Davis—the instructions also clearly directed the jury to look at the substantive murder charge as a predicate crime of violence. See Jury Instructions, Pet'r's Ex. 2 to Pet'r's Mot., at 176:9-176:18 (Doc. No. 1) ("The offenses charged in Counts One and Two, namely the conspiracy to murder Edwin Ramos and the murder of Edwin Ramos, are crimes of violence for which Ruben Feliciano and Ronald Pagan may be prosecuted in a court of the United States. . . . [I]n this instance, the underlying

10

offense could either be the conspiracy to murder Edwin Ramos or the murder of Edwin Ramos." (emphasis added)).

As this court held in Pagan, because the facts of this case make clear that the murder conspiracy and murder charges involved the same murder, such that the two are intertwined, the jury's finding of guilt on the murder charge eliminates any reasonable possibility that the section 924(c) conviction could have rested solely on the conspiracy count. Pagan, 568 F. Supp. 3d at 167; accord Stone, 37 F.4th at 832 (holding that the petitioner was "not prejudiced by the invalid jury instruction that conspiracy to murder in aid of racketeering qualified as a crime of violence, given his conviction of murder in aid of racketeering and uncontroverted evidence that he used a gun to commit that crime").

Based on the prevailing case law and the factual record, Feliciano's argument that the conspiracy charge invalidates his section 924(c) conviction, pursuant to Davis and its related cases, must fail. The petitioner's Motion on this ground is therefore denied.

B.  Whether Connecticut's Murder Statute Qualifies as a Crime of Violence

Feliciano argues, in the alternative, that "a Connecticut state murder is not categorically a crime of violence, and therefore . . . no proper predicate existed for the [section] 924(c) conviction." Pet'r's Mot. at 13.[5] This court plainly rejected that argument in Pagan. The court found, pursuant to the modified categorical approach, that murder under section 53a-54a of the Connecticut General Statutes constituted a

---

[5] The VCAR murder charged in Count Two of the Superseding Indictment relied on Connecticut's state murder statute. See Superseding Indictment, Pet'r's Ex. 1 to Pet'r's Mot., at 3 (Doc. No. 1).

11

crime of violence, in Pagan's case, because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," as required by section 924(c). See 18 U.S.C. § 924(c)(3)(a).

The modified categorical approach is generally applied to a criminal statute that is divisible, i.e., where the statute "sets out one or more of the elements in the alternative," in order to determine which alternative element formed the basis of the defendant's prior conviction. See Descamps v. United States, 570 U.S. 254, 257 (2013). Under this approach, a court may consult a limited set of approved documents, such as jury instructions, to determine which elements formed the basis of the defendant's conviction; then, the court identifies the minimum criminal conduct necessary for conviction under the statute to determine whether the offense qualifies as a crime of violence. See Mathis v. United States, 579 U.S. 500, 505-06 (2016); Pagan, 568 F. Supp. at 167-68 (citing Boykin v. United States, No. 16-CV-4185, 2020 WL 774293, at *5-6 (S.D.N.Y. Feb. 18, 2020)).

In its analysis in Pagan, this court first recognized that section 53a-54a is a divisible statute, providing that "[a] person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception[.]" Conn. Gen. Stat. § 53a-54a (emphasis added). Then, the court applied the modified categorical approach and concluded (1) that, based on the jury instructions, "the first portion of section 53a-54a provides the relevant elements", and (2) that Pagan's conviction, as defined in the statute and as charged in the jury instructions, qualified as a crime of violence because it has as an element the use, attempted use, or threatened use of physical force against

12

a person.  Pagan, 568 F. Supp. at 168; accord 18 U.S.C. § 924(c)(3)(a) (elements clause); Jury Instructions at 168:10-168:14 ("Connecticut General Statutes, Section 53a-54a, provides, in pertinent part . . . 'A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person.' . . . There are two essential elements in the crime of murder.  First, the death of one person must be caused by another person.  Second, the person causing the death of the person must have done so with the intent to cause the death . . . .").  In reaching its decision, this court relied on case law analyzing murder under New York law, finding that the reasoning in those cases compelled its conclusion that Feliciano's murder conviction constituted a crime of violence under section 924(c).  See Pagan, 568 F. Supp. 3d at 167 (collecting cases); see, e.g., United States v. Sierra, 782 Fed. App'x 16, 20 (2d Cir. 2019) (summary order) (concluding that murder under New York law constituted a crime of violence because the "use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly" (internal quotation marks and citations omitted)); Boykin, 2020 WL 774293, at *7 (same); see also Gomez v. United States, 87 F.4th 100, 109 (2d Cir. 2023) (noting that murder under New York law qualifies as a crime of violence).

     Once again, the court sees no reason as to why it should reach a different conclusion in the case at bar.  Feliciano's VCAR murder conviction, like Pagan's, relied on Connecticut's state murder statute, see Superseding Indictment, Pet'r's Ex. 1 to Pet'r's Mot., at 3 (Doc. No. 1), and he was subject to the same jury instructions as Pagan.  Although it does not appear that any courts, other than this court, have addressed this issue regarding Connecticut's murder statute, the Second Circuit has

repeatedly affirmed that murder under New York law constitutes a crime of violence within the meaning of section 924(c)'s elements clause.  See United States v. Scott, 990 F.3d 94, 114-23 (2d Cir. 2021) (en banc) (holding that first-degree manslaughter constitutes a crime of violence because to hold otherwise would, "carried to its logical—or illogical—conclusion . . . preclude courts from recognizing even intentional murder as a categorically violent crime because, presumably, it is just as possible for a defendant to cause a person's death by omission when the defendant's specific intent is to kill"); Stone, 37 F.4th at 832-33 (applying the reasoning in Scott and holding that second-degree murder constitutes a crime of violence).  Because the law underlying this court's decision in Pagan remains good law, the court reaffirms its prior holding that section 53-54a, as defined by the statute and as charged to the jury at Feliciano's trial, constitutes a crime of violence within the meaning of the elements clause of section 927(c).

The second ground of Feliciano's Motion to Vacate Sentence is thus denied.

**V.     CONCLUSION**

For the reasons stated above, the petitioner's Motion to Vacate (Doc. No. 1) is denied.  Although Feliciano's claims fail on the merits, the court determines that he is entitled to a Certificate of Appealability because "reasonable jurists could debate whether . . . the [P]etition should have been resolved in a different manner."  Welch v. United States, 578 U.S. 120, 137 (2016) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of March 2024.

                                             /s/ Janet C. Hall
                                            Janet C. Hall
                                            United States District Judge